**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **R&Q REINSURANCE COMPANY,** | : | |
| **Plaintiff/Counterclaim Defendant,** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **ST. PAUL FIRE AND MARINE** | : | |
| **INSURANCE COMPANY,** | : | **No. 16-1473** |
| **Defendant/Counterclaim Plaintiff.** | : | |

## MEMORANDUM

**Schiller, J.**                                                    **May 12, 2017**

St. Paul Fire and Marine Insurance Company ("St. Paul") insured companies against asbestos claims in the 1980s. R&Q Reinsurance Company ("R&Q") reinsured St. Paul's insurance policies. R&Q sued St. Paul for declaratory judgment, alleging that St. Paul's egregiously late notice absolved R&Q of payment under the policies and that one of the reinsurance contractual relationships was never legally formed. St. Paul counterclaimed, alleging it did not receive payments from R&Q under the reinsurance policies. Presently before the Court is R&Q's motion for judgment on the pleadings in which R&Q argues that St. Paul did not adequately plead the formation of the contract in its counterclaims. The Court disagrees with R&Q's argument and will deny the motion.

## I.        BACKGROUND

St. Paul insures the Walter E. Campbell Company, Inc. against thousands of asbestos-related injury lawsuits. (Countercls. ¶ 8.) In December 1979, St. Paul and R&Q (through INA Reinsurance Company, R&Q's predecessor in interest) entered into the Facultative Reinsurance Binding Authority Agreement ("BAA"), which established a framework for R&Q to reinsure St.

Paul's insurance policies with Campbell. (Am. Answer ¶ 6.) Pursuant to the BAA, R&Q and St. Paul would enter into facultative reinsurance contracts ("FRC") that reinsured St. Paul's Campbell policies for discrete date ranges. (*Id.* at 8.) Facultative reinsurance contracts reinsure liability "arising under a particular policy," as opposed to treaty reinsurance contracts, which cover an entire type of risk from a particular insurance company. (Countercls. ¶ 11.)

The BAA covered "commercial umbrella liability" insurance policies issued by St. Paul. (Compl. Ex. A, at 2.) The BAA provided that each cession[1] "shall attach and become effective concurrently with the [St. Paul's] policy." (*Id.*) The BAA did not cover certain classes of insurance policies, including "[a]ny policy covering any risks not reported within 90 days of its effective date." (*Id.*) St. Paul would inform R&Q of a covered policy with a "cession statement," which contained policy limits, effective dates, and other information pertinent to the reinsurance of the policy. (*Id.* ¶ 3.) R&Q in turn had fifteen days from receipt of the cession statement to terminate coverage of that individual policy. (*Id.*)

R&Q's motion for judgment on the pleadings concerns one facultative reinsurance contract, FRC No. 29550, and an underlying Campbell policy, No. 581XD4769 ("*4769"). (Mem. Law Supp. Mot. J. on Pleadings 2.) St. Paul pleaded the existence of FRC No. 29550 and alleged that it reinsured the liability of *4769. (Countercls. ¶ 13.) St. Paul also pleaded the existence of a second pair of contracts, FRC No. 33366 and another Campbell policy, No. 581XD7801 ("*7801"). (*Id.* ¶¶ 12–13) But, St. Paul did not plead the existence of a cession statement connecting *4769 to FRC No. 29550, nor did St. Paul plead the existence of a cession statement connecting FRC No. 33366 to *7801. (*Id.*)

---

[1] A "cession" under the BAA is the relationship between an individual St. Paul insurance policy and the reinsurance agreement between R&Q and St. Paul.

## II.    STANDARD OF REVIEW

After the close of pleadings but without delaying trial, "a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Failure to state a claim upon which relief can be granted may be raised in a motion for judgment on the pleadings. Fed. R. Civ. P. 12(h)(2)(B). "When a Rule 12(c) motion alleges [Counterclaim Plaintiff's] failure to state a claim upon which relief can be granted as here, [courts] analyze the motion under the same standard as a Rule 12(b)(6) motion to dismiss." *Ober v. Brown*, 105 F. App'x 345, 346 (3d Cir. 2004) (citing *Turbe v. Gov't of V.I.*, 938 F.2d 427, 428 (3d Cir. 1991)). "There is no material difference in the applicable legal standards" between a Rule 12(c) motion for failure to state a claim and a Rule 12(b)(6) motion to dismiss. *Spruill v. Gillis*, 372 F.2d 218, 223 n.2 (3d Cir. 2004).

In reviewing a motion for judgment on the pleadings, a district court must accept as true all well-pleaded allegations and draw all reasonable inferences in favor of the nonmoving party. *See Powell v. Weiss*, 757 F.3d 338, 341 (3d Cir. 2014). A court need not, however, credit "bald assertions" or "legal conclusions" when deciding a motion for judgment on the pleadings. *See Anspach* ex rel. *Anspach v. City of Phila., Dep't of Pub. Health*, 503 F.3d 256, 260 (3d Cir. 2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"Factual allegations [in the counterclaims] must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a motion for judgment on the pleadings, the counterclaims must include "enough facts to state a claim to relief that is plausible on its face." *See id.* at 570. Although the federal rules impose no probability requirement at the pleading stage, the Counterclaim Plaintiff must present "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]" of a cause of action. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008).

"A claim has facial plausibility when the [Counterclaim Plaintiff] pleads factual content that allows the court to draw the reasonable inference that the [Counterclaim Defendant] is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Simply reciting the elements will not suffice. *Id.* (holding that pleading labels and conclusions without further factual enhancement will not survive motion to dismiss); *see also Phillips*, 515 F.3d at 233.

The Third Circuit Court of Appeals has directed district courts to conduct a two-part analysis when faced with a motion for judgment on the pleadings. First, the legal elements and factual allegations of the claim should be separated, with the well-pleaded facts accepted as true but the legal conclusions disregarded. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009). Second, the court must make a commonsense determination of whether the facts alleged in the counterclaims are sufficient to show a plausible claim for relief. *Id.* at 211. If the court can only infer the mere possibility of misconduct, the counterclaims must be dismissed because it has alleged—but has failed to show—that the pleader is entitled to relief. *Id.*

## III.    DISCUSSION

R&Q contends that St. Paul did not plead the existence of a contractual relationship between FRC No. 29550 and *4769 because St. Paul did not plead the existence of a cession statement connecting the two contracts. In order to state a claim for breach of contract, the plaintiff must first allege "the existence of a contract, including its essential terms." *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 225 (3d Cir. 2003) (quoting *CoreStates Bank, N.A. v. Cutillo*, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999)).[2] However, "[a counter claimant] is not required to

---

[2] The parties dispute whether Pennsylvania law or Illinois law should apply to this breach of contract claim. Because both states require pleading the existence of a contract, and R&Q's only argument here is whether St. Paul adequately pleaded the existence of a contractual connection between FRC No. 29550 and *4769, the Court need not

attach the subject contract to the [counterclaims] or plead its terms verbatim in order to state a claim." *Jones v. Select Portfolio Servicing, Inc.*, 2008 U.S. Dist. LEXIS 33284, at *10 (E.D. Pa. Apr. 22, 2008).

St. Paul adequately pleaded the existence of a contractual relationship between FRC No. 29550 and *4769 despite not attaching either contract to their counterclaims. Attached to R&Q's complaint are the only documents attached to any of the pleadings: the BAA, FRC No. 33366, and the cession statement linking FRC No. 33366 with *7801. (Compl. Ex. A.) St. Paul asserted that "[FRC No. 29550] reinsures liability under [*4769]" and that "[t]he limits of [FRC No. 29550] are identical to the limits of [FRC No. 33366]." (Countercls. ¶ 13.) St. Paul is not required to attach either No. 29550 or *4769 and sufficiently pleaded the essential terms of the cession. *See Ware*, 322 F.3d at 225.

R&Q's argument that St. Paul must allege a cession statement in order to sufficiently plead the existence of a contract is unavailing. The BAA explicitly states that "[e]ach cession shall attach and become effective concurrently with [St. Paul's] policy." (Compl. Ex. A, at 2.) The BAA notably does not say the cession will "attach and become effective" after St. Paul submits a cession statement to R&Q. (*Id.*) Under the BAA, R&Q had the option of terminating an existing agreement with respect to any individual cession, but that necessarily requires an agreement to already exist. (*Id.* at 3.) R&Q's ability to terminate a cession is not a condition precedent of a contractual relationship between an FRC and an individual policy; rather, it is a power the BAA affords R&Q to cancel an already formed contract.

---

decide the choice of law issue. *Compare Ware*, 322 F.3d at 225 (quoting *CoreStates Bank, N.A.*, 723 A.2d at 1058.), *with Avila v. CitiMortgage, Inc.*, 801 F.3d 777, 786 (7th Cir. 2015) (citing *W.W. Vincent & Co. v. First Colony Life Ins. Co.*, 814 N.E.2d 960, 967 (Ill. App. Ct. 2004)) ("The elements of a claim for breach of contract are (1) the existence of a valid and enforceable contract . . .").

R&Q's baleful predictions regarding the downfall of facultative reinsurance contracts should the Court allow St. Paul's counterclaim to proceed puts the cart well before the horse. The motion for judgment on the pleadings before the Court alleges a failure by St. Paul to state a claim for breach of contract. Denying the motion does not assure St. Paul's victory. If, as R&Q alleges in its motion, St. Paul did not provide a cession statement for *4769, St. Paul may have violated the BAA's terms excluding "[a]ny policy covering any risks not reported within 90 days of its effective date" and requiring St. Paul to furnish a cession statement "for each cession made under this Agreement." (Mem. Law Supp. Mot. J. on Pleadings 6–7; Compl. Ex. A, at 2–3.) The existence of the cession statement declaring *4769 to R&Q, however, is a factual dispute regarding the *breach*, not the *existence*, of the contract, and is properly addressed after the close of discovery on a motion for summary judgment or at trial.

R&Q's failure to move for judgment on the pleadings regarding the existence of a valid contract between FRC No. 33366 and *7801, in addition to FRC No. 29550 and *4769, lends further weight in favor of denial. St. Paul notably did not plead the existence of a cession statement linking FRC No. 33366 and *7801, just as it did not plead a cession statement for No. 29550 and *4769. (Countercls.) The fact that R&Q is challenging one pair of contracts but not the other comes down to the disclosure of a cession statement for the first pair and the lack thereof for the second. St. Paul adequately pleaded a relationship between both pairs of contracts, even without reference to a cession statement, and therefore the Court will deny R&Q's motion.

IV.    **CONCLUSION**

For the foregoing reasons, R&Q's motion for judgment on the pleadings is denied. An Order consistent with this Memorandum will be docketed separately.