# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| R&Q REINSURANCE COMPANY, Plaintiff/Counterclaim Defendant, | : : : | CIVIL ACTION |
| v. | : : | |
| ST. PAUL FIRE AND MARINE INSURANCE COMPANY, Defendant/Counterclaim Plaintiff. | : : : : | No. 16-1473 |

FILED
AUG 0 1 2017
KATE BARKMAN, Clerk
By_____Dep. Clerk

## MEMORANDUM

**Schiller, J.**                                                                                                                                                               **August 1, 2017**

R&Q Reinsurance Company ("R&Q") reinsured St. Paul Fire and Marine Insurance Company ("St. Paul") for St. Paul's underlying asbestos insurance policies with the Walter E. Campbell Company ("Campbell"). Before the Court are R&Q's motion to compel, St. Paul's motion to compel, and St. Paul's two motions for protective orders.

R&Q's motion to compel addresses three issues: first, St. Paul redacted documents and refused to answer interrogatories on the basis of "proprietary information"; second, St. Paul, in much of its document production, redacted historical loss reserves related to the underlying Campbell insurance policies; third, St. Paul did not disclose documents or respond to interrogatories related to non-R&Q reinsurance policies that St. Paul maintained covering the Campbell policies. The Court finds that the proprietary information is protected by this Court's protective order, and that St. Paul's historical loss reserves with Campbell are relevant and do not fall under the work-product doctrine or the attorney-client privilege. The Court also finds that information related to other reinsurers, inasmuch as they also reinsure Campbell policies, is relevant and discoverable. Thus, the Court will grant R&Q's motion to compel.

St. Paul's motion to compel addresses two issues: R&Q's nonresponsive answers to two interrogatories and the adequacy of R&Q's disclosures. The Court will deny St. Paul's motion to compel, finding that R&Q's consolidated memorandum of law adequately answers the two interrogatories and R&Q has produced sufficient discovery to date.

Finally, St. Paul's two motions for protective orders address identical issues contained in R&Q's motion to compel and will be denied.

I. **BACKGROUND**

R&Q, a reinsurer, provided reinsurance coverage to St. Paul, an insurer of underlying asbestos-related claims with the Campbell Company. (Countercls. ¶ 8.) St. Paul argues that it and R&Q entered into two facultative reinsurance contracts, FRC Nos. 29550 and 33366, insuring two Campbell policies, Nos. 581XD4769 and 581XD7801, respectively. (Countercls. ¶¶ 12–13.)

Discovery is ongoing. In order to facilitate the discovery process, the Court entered a protective order covering proprietary information between the parties. (Order, ECF No. 37.) On June 1, 2017, R&Q filed a motion to compel production of documents and answers to interrogatories, alleging that St. Paul had improperly withheld proprietary information, historical loss reserves, and information related to St. Paul's relationships with other reinsurance companies. (R&Q's Mot. Compel, ECF No. 47.) On June 15, 2017, St. Paul filed its own motion to compel responses to interrogatories and a certification of adequate document production, (St. Paul's Mot. Compel, ECF No. 51), and a motion for a protective order precluding deposed witnesses from testifying about reserve information and other reinsurers (St. Paul's Mot. Protective Order, ECF No. 52).

Further muddying the waters, St. Paul filed a supplemental motion for a protective order, reiterating why it should not be required to disclose historical loss reserves and information related to other reinsurance companies. (St. Paul's Suppl. Mot. Protective Order, ECF No. 60.) Because St. Paul's motions for protective orders concern identical issues contained in R&Q's motion to compel, the Court will address them all concurrently.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 26 governs the discovery process, which allows the parties to obtain "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "Relevance in this context has been 'construed broadly to encompass any matter that could bear on, or that could reasonably lead to other matter that could bear on any issue that is or may be in the case.'" *United States ex rel. Bergman v. Abbott Labs.*, Civ. A. No. 09-4264, 2016 U.S. Dist. LEXIS 106065, at *7–8 (E.D. Pa. Aug. 11, 2016) (quoting *Oppenheimer Fund v. Sanders*, 437 U.S. 340, 351 (1978)). The scope of discovery is broad, but it is not unlimited. *See Bayer AG v. Betachem, Inc.*, 173 F.3d 188, 191 (3d Cir. 1999).

"[W]here a party receives evasive or incomplete answers to a discovery request, they are permitted to bring a motion to compel disclosure" under Federal Rule of Civil Procedure 37. *In re Auto. Refinishing Paint Antitrust Litig.*, MDL No. 1426, 2006 U.S. Dist. LEXIS 34129, at *6 (E.D. Pa. May 26, 2006). "The party resisting disclosure bears the burden of persuasion." *Id.*

3

## III. DISCUSSION

R&Q's motion to compel addresses three distinct issues: proprietary information, historical loss reserves, and information related to other reinsurance companies.[1] St. Paul's motion to compel contains two: R&Q's inadequate responses to two interrogatories and a requirement to certify discovery. The Court will address each in turn.

### A. R&Q's Motion to Compel

#### 1. Proprietary Information

Companies cannot use discovery to unearth their competitors' proprietary information. The Federal Rules of Civil Procedure guard against this very scenario through protective orders, which can shield proprietary, but otherwise discoverable, information from public disclosure. *See* Fed. R. Civ. P. 26(c)(1)(G). Proprietary information, unlike privileged information, may be discoverable. *Compare* Fed. R. Civ. P. 26(c)(1)(G) (allowing a protective order to shield proprietary information), *with* Fed. R. Civ. P. 26(b)(5) (dealing with attorney-client privilege).

At the outset of this case, St. Paul requested, and R&Q did not oppose, the entering of a protective order to safeguard proprietary information exchanged between the parties over the course of discovery. (Order, ECF No. 37.) St. Paul cannot now, in the absence of any further justification, withhold or redact as "proprietary" documents already covered by the protective order. *See, e.g., Liberty Mut. Ins. Co. v. C. Schmidt & Sons, Inc.*, Civ. A. No. 89-6468, 1991 U.S. Dist. LEXIS 3718, at *2 (E.D. Pa. Mar. 26, 1991) (allowing discovery of proprietary information with the entry of a protective order). Therefore, the Court will grant R&Q's motion with respect to proprietary information and order St. Paul to disclose the withheld documents.

---

[1] St. Paul's motions for protective orders also address historical loss reserves and information related to other reinsurance companies.

4

## 2. Historical Loss Reserves

Historical loss reserves are the amount of money insurers set aside once they are notified of potential losses from their underlying policies. *N. River Ins. Co. v. Greater N.Y. Mutual Ins. Co.*, 872 F. Supp. 1411 (E.D. Pa. 1995) (citing 40 Pa. Cons. Stat. § 115). Whether historical loss reserves constitute work product or are protected by attorney client privilege is a case-specific inquiry. *See, e.g., Safeguard Lighting Sys., Inc. v. N. Am. Specialty Ins. Co.*, Civ. A. No. 03-4145, 2004 U.S. Dist. LEXIS 26136, at *8 (E.D. Pa. Dec. 30, 2004) (finding reserve information prepared by adjusters in the ordinary course of business not protected by the work-product doctrine or attorney-client privilege); *Rhone-Poulenc Rorer, Inc. v. Home Indem. Co.*, 139 F.R.D. 609, 614 (E.D. Pa. 1991) ("Where the reserves have been established based on legal input, the results and supporting papers most likely will be work-product and may also reflect attorney-client privilege communications.").

Materials produced "in the course of preparation for possible litigation" are generally protected from disclosure under the work-product doctrine, but "[w]ork product prepared in the ordinary course of business is not immune from discovery." *Holmes v. Pension Plan of Bethlehem Steel Corp.*, 213 F.3d 124, 138 (3d Cir. 2000). Attorney-client privilege may only be claimed when, among other factors, "the person to whom the communication was made is a member of the bar of a court" and "in connection with this communication is acting as a lawyer." *Montgomery Cty. v. Microvote Corp.*, 175 F.3d 296, 301 (3d Cir. 1999) (quoting *Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851, 862 (3d Cir. 1994)).

St. Paul's historical loss reserves with Campbell are relevant to R&Q's claim that St. Paul did not provide prompt notice of loss to R&Q. Given that reserves are required after notice of loss from the underlying policies, this information may demonstrate when St. Paul had notice of

5

potential losses from the Campbell policies. Further, the reserve amounts R&Q seeks do not fall under either the work-product doctrine or the attorney-client privilege. Claims adjustors, not attorneys, created the information in question in the ordinary course of business. *See Safeguard Lighting Sys., Inc.*, 2004 U.S. Dist. LEXIS 26136, at *8.

St. Paul's argument that disclosure of reserve information contravenes public policy is equally unavailing and rests on a confusion of the insurer/reinsured–reinsurer relationship.[2] Some courts are reluctant to allow disclosure of the insurer's reserve information to the insured, even when tabulated by non-attorneys, because reserves can be considered an estimate of the insurer's potential liability to its insured. But in this case, the reinsurer (R&Q) requests from the reinsured (St. Paul) reserve information related to the underlying insured party (Campbell). That reserve information reflects St. Paul's estimate of potential liability from the Campbell policies, not from this lawsuit with R&Q. Thus, the Court will grant R&Q's motion with respect to St. Paul's historical loss reserves.

### 3. Other Reinsurers

St. Paul redacted a significant amount of information related to other reinsurance policies it took out for the underlying Campbell claims. Ordinarily, reinsurance contracts with different language and involving other reinsurance companies would not be relevant in determining whether the reinsured provided adequate notice to the reinsurer for the reinsurance contracts at issue. *See, e.g., Travelers Cas. & Sur. Co. v. Century Indem. Co.*, Civ. A. No. 10-400, 2011 U.S. Dist. LEXIS 132131 (D. Conn. Nov. 16, 2011). However, if a reinsured does not provide notice to the reinsurer until many years after the underlying claims accrued, whether and when the

---

[2] In the reinsurance context, the insurer (St. Paul) is the reinsured, which is the functional equivalent of an insured. The reinsurer (R&Q) is the functional equivalent of an insurer.

reinsured gave notice to other reinsurers for the same class of underlying claims becomes relevant. *See Utica Mut. Ins. Co. v. Fireman's Fund Ins. Co.*, Civ. A. No. 09-853, 2012 WL 12896163, at *9 (N.D.N.Y. Dec. 21, 2012).

St. Paul began defending the Campbell claims in the late 1980s. (Aff. David Attidani Ex. T.) R&Q did not receive a notice of loss regarding those claims until April 2013. (*Id.* Ex. E.) The decades-long dearth of information regarding notice impairs R&Q's preparation of a late notice argument. Other reinsurance information related to St. Paul's insurance policies with Campbell is relevant to R&Q's late notice claim and the Court will allow discovery to proceed on that issue.

### B. St. Paul's Motion to Compel

St. Paul filed a motion to compel arguing R&Q did not adequately answer two interrogatories and did not produce sufficient responsive documents. St. Paul claimed that R&Q's evasive responses to interrogatories 13 and 14 dodged a potentially central issue in this case: whether R&Q suffered any prejudice from St. Paul's notice of loss. (St. Paul's Consolidated Mem. Law 3, ECF No. 53.) This issue is now moot after R&Q sufficiently addressed potential prejudice in its memorandum of law in response to St. Paul's motion for a protective order. (R&Q's Consolidated Mem. Law 5–8, ECF No. 56.)

St. Paul also contends that R&Q's discovery production was insufficient because R&Q only disclosed 135 documents to St. Paul. (St. Paul's Consolidated Mem. Law 5, ECF No. 53.) As R&Q persuasively argues, St. Paul's characterization is highly misleading. (R&Q's Consolidated Mem. Law 9, ECF No. 56.) R&Q has in fact turned over 1388 pages of documents, and while this is significantly fewer than St. Paul's 197,000 disclosed pages, R&Q would naturally have fewer documents since it was only informed of the notice of loss in 2013. St. Paul's motion to compel will be denied. *Id.*

## IV. CONCLUSION

For the foregoing reasons, R&Q's motion to compel is granted. St. Paul's motion to compel, motion for a protective order, and supplemental motion for a protective order are denied. An Order consistent with this Memorandum will be docketed separately.